## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TENET HEALTHSYSTEM PHILADELPHIA, INC.,** | : | **MISCELLANEOUS ACTION** |
| | : | |
| Movant, | : | |
| | : | **NO. 12-_____** |
| v. | : | |
| | : | |
| **FRANCIS ROONEY,** | : | |
| | : | |
| Respondent. | : | |

### ORDER

AND NOW, this _____ day of _____ 2012, upon consideration of Movant's Motion to Confirm Arbitration Award, and any response thereto, it is hereby ORDERED that said motion is GRANTED. The Clause Construction Award dated January 17, 2012 issued by the American Arbitration Association is hereby CONFIRMED.

BY THE COURT:

_____
                                              J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TENET HEALTHSYSTEM PHILADELPHIA, INC.,** | : | **MISCELLANEOUS ACTION** |
| **Movant,** | : | |
| **v.** | : | **NO. 12-_____** |
| **FRANCIS ROONEY,** | : | |
| **Respondent.** | : | |

### MOTION TO CONFIRM ARBITRATION AWARD

Pursuant to 9 U.S.C. § 9, Movant Tenet HealthSystem Philadelphia, Inc.[1] ("Movant") hereby moves for an Order confirming the Clause Construction Award dated January 17, 2012 issued by the American Arbitration Association.  In support of its Motion, Movant relies upon the accompanying memorandum of law.

WHEREFORE, Movant Tenet HealthSystem Philadelphia, Inc. respectfully requests that this Court grant its Motion and enter an Order confirming the Clause Construction Award dated January 17, 2012 issued by the American Arbitration Association.

---

[1] Mr. Rooney's Demand for Arbitration identifies no less than 27 different individuals and/or entities as alleged Respondents.  Because Mr. Rooney worked at St. Christopher's Hospital for Children in Philadelphia, Pennsylvania, the only arguably proper named Respondent is Tenet HealthSystem Philadelphia, Inc. and its agents.  Accordingly, that is the entity which responded to the Demand and moves for confirmation of the arbitration award.  To the extent other individuals and/or entities are determined proper respondents in the arbitration, the positions stated herein are asserted on their behalf as well.

Respectfully submitted,

Dated:  February 16, 2012

_____
James N. Boudreau, Esq.
Brian T. Feeney, Esq.
GREENBERG TRAURIG, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
215.988.7800 (Telephone)
215.988.7801 (Telecopy)
boudreauj@gtlaw.com
feeneyb@gtlaw.com

and,

/s/ Michele H. Malloy
_____
Michele H. Malloy, Esq.
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
267.402.3004 (Telephone)
267.402.3131 (Telecopy)
mmalloy@littler.com

ATTORNEYS FOR MOVANT(S)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TENET HEALTHSYSTEM PHILADELPHIA, INC., | : | MISCELLANEOUS ACTION |
| | : | |
| Movant, | : | |
| | : | NO. 12-_____ |
| v. | : | |
| | : | |
| FRANCIS ROONEY, | : | |
| | : | |
| Respondent. | : | |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO CONFIRM ARBITRATION AWARD**

Movant Tenet HealthSystem Philadelphia, Inc. ("Tenet" or the "Movant")[2] hereby files this Memorandum of Law in support of its Motion to Confirm the Clause Construction Award dated January 17, 2012 issued by the American Arbitration Association.

**I.    INTRODUCTION**

Tenet seeks an order pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*, (the "FAA") confirming the Clause Construction Award dated January 17, 2012 issued by the American Arbitration Association.  The standard of review this Court must apply to Tenet's request for confirmation of the award is extremely deferential to the result reached by the arbitrator.  Indeed, the FAA requires the Court to confirm the award unless the party opposing confirmation demonstrates that the arbitration was tainted by fraud, corruption, evident partiality,

---

[2] Mr. Rooney's Demand for Arbitration identifies no less than 27 different individuals and/or entities as alleged Respondents.  Because Mr. Rooney worked at St. Christopher's Hospital for Children in Philadelphia, Pennsylvania, the only arguably proper named Respondent is Tenet HealthSystem Philadelphia, Inc. and its agents.  Accordingly, that is the entity which responded to the Demand and moves for confirmation of the arbitration award.  To the extent other individuals and/or entities are determined proper respondents in the arbitration, the positions stated herein are asserted on their behalf as well.

or other misconduct.  Because the record does not remotely support the conclusion that the

arbitrator's result was impermissibly tainted, this Court should confirm the award.

**II.**     **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Respondent Francis Rooney is a nurse who worked at St. Christopher's Hospital for

Children, an acute care children's hospital, located in Philadelphia, Pennsylvania.  Tenet owns

and operates St. Christopher's.

Mr. Rooney resides in Philadelphia, Pennsylvania.  On November 18, 1998, as a

condition of his Tenet employment, Mr. Rooney signed an acknowledgement form in which,

among other things, he agreed that he would submit any claims that may arise out of his

employment for resolution via Respondent's Open Door Policy and Fair Treatment Process

("FTP"), a multi-step dispute resolution program which culminates in arbitration.  Mr. Rooney

signed another such acknowledgement on April 21, 2007.  The FTP expressly provides, and thus

Mr. Rooney agreed, that the FAA and the procedural rules of the American Arbitration

Association ("AAA") would govern any arbitration between him and Tenet.  True and correct

copies of the Employee Acknowledge forms signed by Mr. Rooney and the Tenet Open Door

Policy and Fair Treatment Process, to which the forms refer, are attached as **Exhibit A**.

On or about February 26, 2010, Mr. Rooney commenced an arbitration proceeding before

the AAA.  His statement of claim sought relief not only for himself, but also on behalf of a

putative class of persons employed at various Tenet hospitals throughout the country.  Mr.

Rooney asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the

Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.*, the Racketeer Influenced

and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.*, and various states' laws.  A copy of

Mr. Rooney's Statement of Claim is attached hereto as **Exhibit B**.

On or about July 8, 2011, Movant filed a Motion for Initial Arbitration Clause Construction Dismissing and/or Striking the Class and Collection Claims.  In accordance with the AAA's Supplementary Rules for Class Arbitration, Movant sought an interim award from the arbitrator ruling that the arbitration clause at issue did not permit Mr. Rooney's arbitration proceeding to proceed on anything other than an individual basis.  The parties fully briefed this issue, and on January 17, 2012, the arbitrator signed a Clause Construction Award finding that "[t]he arbitration clause in question does not permit the arbitration to proceed on behalf of a class." *See* Clause Construction Award, attached hereto as **Exhibit C**, at 9.   The arbitrator further ruled that the arbitration "proceedings shall be stayed for thirty days to permit any party the opportunity to move a court of competent jurisdiction to confirm or vacate this Clause Construction Award." *Id.*

Movant now asks this Court to confirm the Arbitrator's January 17, 2012 Clause Construction Award.

## III.   ARGUMENT

### A.   This Court Must Confirm The Award.

Section 9 of the FAA authorizes judicial confirmation of arbitration awards, providing in relevant part as follows:  "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award." 9 U.S.C. § 9.  Section 9 further requires that the Court "must" confirm the arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. *Id.*

The grounds on which a party may seek vacatur of an arbitration award are exceedingly

limited. *See Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) (stating district court may

vacate an arbitration award "only under exceedingly narrow circumstances"); *Local 863 Int'l*

*Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers v. Jersey Coast Egg*

*Producers, Inc.*, 773 F.2d 530, 533 (3d Cir. 1985) ("the district court's scope of review is

narrowly circumscribed"). The Court is not permitted to review the arbitrator's conclusions in

the way an appellate court reviews a district court's decisions. "Rather, arbitration awards enjoy

a strong presumption of correctness that may be overcome only in certain limited

circumstances." *Major League Umpires Assoc. v. American League of Professional Baseball*

*Clubs*, 357 F.3d 272, 280 (3d Cir. 2004).

Section 10 of the FAA sets forth the four exclusive grounds on which a court may vacate

an arbitration award. These include:

> (1)  where the award was procured by corruption, fraud, or
> undue means;
>
> (2)  where there was evident partiality or corruption in the
> arbitrators, or either of them;
>
> (3)  where the arbitrators were guilty of misconduct in
> refusing to postpone the hearing, upon sufficient cause show, or in
> refusing to hear evidence pertinent and material to the controversy;
> or of any other misbehavior by which the rights of any party have
> been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual, final, and definite award
> upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Accordingly, courts ruling on motions to vacate or confirm arbitration awards

must be extremely deferential to the arbitrator's ruling. As the Third Circuit has recognized, the

"net result of a court's application of this standard is generally to affirm easily the arbitration

award under this extremely deferential standard -- a result that is squarely in line with the

purpose behind the FAA where courts are tasked with reviewing an arbitration decision." *Dluhos*, 321 F.3d at 370.

In passing on a motion to vacate or confirm an arbitration award, "[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). Indeed, where the arbitrator resolves a contractual dispute, "and no dishonesty is alleged, the arbitrators' 'improvident, even silly factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." *Id.* (internal quotations and citations omitted). A reviewing court may also not substitute its interpretation of a contract for the arbitrator's. *See Jersey Coast*, 773 F.2d at 534-35 (reversing district court's order vacating arbitration award because "[t]he district court impermissibly imposed its own interpretation of the collective bargaining agreement"). Moreover, a court may not overrule an arbitrator's decision "simply because it believes its own interpretation of the contract would be the better one." *Jersey Coast*, 773 F.2d at 533 (internal quotations and citations omitted). "Nor may a court disturb an arbitrator's award because it finds an error of law." *Id.*

Against these exceedingly high standards, there is no conceivable basis here to vacate the award. Mr. Rooney cannot show that the award was procured by corruption or fraud, or that the arbitrator exhibited manifest partiality or corruption. Moreover, the record reveals no misconduct on the part of the arbitrator that either prevented Mr. Rooney from presenting his case or that otherwise prejudiced the outcome. Finally, the arbitrator did not exceed her powers. To the contrary, the issues subsumed within the Clause Construction Award are squarely within the arbitrator's purview. Because there is no basis to vacate the award, Section 9 of the FAA mandates that this Court "must grant" this Motion and enter an order confirming the award.

**B.**     **Jurisdiction And Venue Are Proper.**

The FAA does not itself confer subject matter jurisdiction; thus, a party seeking to vacate an arbitration award "must demonstrate that some provision of federal law independent of the FAA presents the court with subject matter jurisdiction." *Royal Bank America v. Kirkpatrick*, 2011 WL 4528349, at \*3 (E.D. Pa. Sept. 30, 2011).  This Court therefore has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331 because the claims asserted by Mr. Rooney in the arbitration arise under federal law.  This Court may exercise personal jurisdiction over Mr. Rooney because he resides in Philadelphia, Pennsylvania and that is where he worked for Tenet.  *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

Because Mr. Rooney resides in this district, and because the events giving rise to his claims took place in this district, venue is also appropriate in this Court under 28 U.S.C. § 1391. *See Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 203-04 (2000) (FAA Section 9's provision that application to confirm arbitration award "may be made" in court for district in which award was made is permissive and not mandatory; venue is appropriate as long as exercise of venue comports with 28 U.S.C. § 1391).

## IV.   __CONCLUSION__

For all of the foregoing reasons, this Court must confirm the Clause Construction Award

dated January 17, 2012 issued by the American Arbitration Association.

Dated:  February 16, 2012                    Respectfully submitted,

James N. Boudreau, Esq.
Brian T. Feeney, Esq.
GREENBERG TRAURIG, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
215.988.7800 (Telephone)
215.988.7801 (Telecopy)
boudreauj@gtlaw.com
feeneyb@gtlaw.com

and,


/s/ Michele H. Malloy

Michele H. Malloy, Esq.
LITTLER MENDELSON, P.C.
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
267.402.3004 (Telephone)
267.402.3131 (Telecopy)
mmalloy@littler.com

ATTORNEYS FOR MOVANT(S)

## CERTIFICATE OF SERVICE

I hereby do certify that on this 16th day of February, 2012, I caused a true and correct copy of the foregoing Motion to Confirm Arbitration Award, Proposed Order, Memorandum of Law and Supporting Exhibits, to be served via certified mail, return receipt requested, upon the following counsel of record:

J. Nelson Thomas
Justin Cordello
Jared Cook
THOMAS & SOLOMON LLP
693 East Avenue
Rochester, NY 14607


/s/ James N. Boudreau
James N. Boudreau, Esq.

# Exhibit A

## EMPLOYEE ACKNOWLEDGMENT

I acknowledge that I have received a copy of the Tenet Healthcare Corporation Employee Handbook and Standards of Conduct and that I understand that they contain important information about the Company's general personnel policies and about my privileges and obligations a an employee. I further understand and acknowledge that I am governed by the contents of the Employee Handbook and Standards of Conduct *(to the extent that they are not inconsistent with any collective bargaining agreement that may otherwise govern my employment)* and that I am expected to read, understand, familiarize myself with and comply with the policies contained in them.

I also understand that the Company may change, rescind or add to any of the policies, benefits or practices described in the Employee Handbook, except the employment-at-will policy and the Mutual Agreement to Arbitrate referred to below, in its sole and absolute discretion, with or without prior notice. I also understand that the Company will advise employees from time to time of material changes to the policies, benefits or practices described in the Employee Handbook.

Furthermore, I understand, acknowledge and agree that the Employee Handbook is not a contract of employment, that my employment with the Company is not for a specified term and that employment with the Company is at the mutual consent of the employee and the Company. Therefore, I hereby acknowledge that either I or the Company can terminate my employment relationship at will, with or without cause or notice, except *to the extent that any applicable collective bargaining agreement provides otherwise.*

In addition, I acknowledge that I have received a copy of the Tenet Fair Treatment Process brochure. *Except to the extent that any applicable collective bargaining agreement provided otherwise,* I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes except "Excluded Issues" that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy of any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use of arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of American Arbitration Association ("AAA").

I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out-or-pocket expenses for the arbitrator and the administrative cost of the AAA will be an amount equal to one day's pay (if I am an exempt employee) or eight times my hourly rate of pay (if I am a non-exempt employee), and that the Company will pay all of the remaining fees and administrative costs of the arbitrator and the AAA. I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except in writing by both me and the Company.

_____ RN   4/21/07
Employee Signature                     Date

FRANK M RASER RN
Employee Name (please print)

DETACH FOR HUMAN RESOURCES FILE

1/07                                                                 103

# EMPLOYEE ACKNOWLEDGMENT FORM

I acknowledge that I have received a copy of the Tenet Employee Handbook and Standards of Conduct and that I understand that they contain important information about the company's general personnel policies and about my privileges and obligations as an employee. I further understand and acknowledge that I am governed by the contents of the Employee Handbook and Standards of Conduct and that I am expected to read, understand, familiarize myself with and comply with the policies contained in them.

I also understand that the company may change, rescind or add to any of the policies, benefits or practices described in the Employee Handbook, except the employment-at-will policy and the Mutual Agreement to Arbitrate referred to below, in its sole and absolute discretion, with or without prior notice. I also understand that the company will advise employees from time to time of material changes to the policies, benefits or practices described in the Employee Handbook.

Furthermore, I understand, acknowledge and agree that the Employee Handbook is not a contract of employment, that my employment with the company is not for a specified term and that employment with the company is at the mutual consent of the employee and the company. Therefore, I hereby acknowledge that either I or the company can terminate my employment relationship at will, with or without cause or notice.

In addition, I acknowledge that I have received a copy of the Tenet Fair Treatment Process brochure. I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ("AAA").

I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out-of-pocket expenses for the arbitrator and the administrative costs of the AAA will be an amount equal to one day's pay (if I am an exempt employee) or eight times my hourly rate of pay (if I am a non-exempt employee), and that the Company will pay all of the remaining fees and administrative costs of the arbitrator and the AAA. I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except by a written statement signed by both me and the Company.

_____     11-18-98
Employee Signature                              Date

Francis M Rooney
Employee Name (please print)

DETACH FOR HUMAN RESOURCES FILE

TS115EMPL/101044                                    REV. 1   4/98



# Tenet Open Door Policy and Fair Treatment Process

# Tenet Open Door Policy
## and
## Fair Treatment Process

### For Resolution of Problems, Concerns and Disputes

Tenet believes that positive employee relations and morale can be best achieved and maintained in a working environment that promotes ongoing and open communication between supervisors and employees, including open and candid discussions of employee problems, concerns and disputes. Tenet utilizes an *Open Door Policy* designed to encourage its employees to openly express their problems, concerns and opinions on any issue related to their employment.

Tenet sincerely hopes that you will never have a dispute relating to your employment with the company. However, Tenet recognizes that disputes sometimes arise between an employer and its employees relating to the employment relationship. Tenet believes that it is in the best interests of both its employees and the company to resolve those disputes in a forum that provides the fastest, least expensive and fairest method for resolving them. Therefore, in addition to the Open Door Policy, Tenet has established the *Fair Treatment Process* ("*FTP*"), a comprehensive mechanism for resolving employment-related disputes between you and the company. The FTP is a multiple-step process that ultimately provides for final and binding arbitration of employment-related disputes if they are not resolved in any of the previous steps in the process. Tenet employees can use the Open Door Policy and the Fair Treatment Process without fear of retaliation or reprisal.

### Application and Coverage

The FTP applies to all employees, regardless of length of service or status, and covers all disputes relating to or arising out of an employee's employment with the company or the termination of employment. The only disputes or claims not covered by the FTP are those listed in the "Exclusions and Restrictions" section below. Examples of the type of disputes or claims covered by the FTP include claims for wrongful termination of employment, breach of contract, employment discrimination, harassment or retaliation under the Americans With Disabilities Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 and its amendments or any state or local discrimination laws, tort claims, or any other legal claims and causes or action recognized by local, state or federal law or regulations. *Your decision to accept employment or to continue employment with the company constitutes your agreement to be bound by the FTP. Likewise, the company agrees to be bound by the FTP.* This mutual agreement to arbitrate claims means that

both you and the company are bound to use the FTP as the only means of resolving employment-related disputes and to forego any right either may have to a jury trial on issues covered by the FTP. However, no remedies that otherwise would be available to you or the company in a court of law will be forfeited by virtue of the agreement to use and be bound by the FTP.

## The Steps

You are encouraged to first use the company's informal Open Door Policy to discuss any problems, concerns or disputes you may have with your supervisor. If this informal method does not resolve the issue, then you are encouraged to initiate the more formal Fair Treatment Process described below to resolve the issue. The FTP consists of the following five steps that employees generally must follow to obtain a resolution of a problem, concern or dispute:



Step 1
Submit Dispute to Supervisor

Step 2
Appeal Supervisor's Decision to Department Head

Step 3
Appeal Department Head's Decision to Administration

Step 4
Appeal Administration's Decision to FTP Committee

Step 5
Final and Binding Arbitration

During Steps 1 through 4 of the FTP, neither you nor the company may be represented by legal counsel, although both you and the company have the right to consult privately with your own counsel at any time at your own expense.

### Step 1: Supervisor

If an informal discussion with your Supervisor did not resolve your problem, concern or dispute, you should promptly contact the Human Resources Department to obtain a *FTP Dispute Resolution Form*. You should complete

2

the form and submit it to your supervisor to initiate the FTP.
The supervisor will investigate the problem and will attempt to
resolve it. The supervisor will respond to you in writing on the
form as soon as possible, usually within seven calendar days
from the date you raised the issue. However, in situations
where your problem relates to the supervisor, or you do not
feel comfortable talking to the supervisor about the problem
for any reason, you may consult with a representative of the
Human Resources Department for guidance and go directly to
*Step 2* in the process.

### Step 2: Department Head

If you are not satisfied with the supervisor's response to
the problem or dispute in *Step 1*, then you may take the
problem or dispute to your Department Head. If you wish to
pursue this second step in the FTP, you should complete the
Section marked *"Step 2"* on the FTP Dispute Resolution Form
and submit the completed form to the Human Resources
Department and request that the form be submitted to your
Department Head. The Human Resources Department then
will submit the FTP Dispute Resolution Form to your
Department Head for consideration and response. Your
Department Head will discuss the problem with both you and
your supervisor and will attempt to resolve it. A written
response from your Department Head will be provided to you
as soon as possible, usually within seven calendar days of the
date the Department Head receives your completed FTP
Dispute Resolution Form.

### Step 3: Administration

If the response from your Department Head in *Step 2* does
not resolve your problem or dispute, you may take the
problem or dispute to a member of the Facility's
Administration office for consideration. If you wish to pursue
this third step in the FTP, you should complete the section
marked *"Step 3"* on the FTP Dispute Form and submit the
completed form to the Human Resources Department and
request that your FTP Dispute Resolution Form be submitted
to Facility Administration for review. The Human Resources
Department will submit the FTP Dispute Resolution Form to
the appropriate member of Facility Administration for
consideration and response. A written response from
Administration will be provided to you as soon as possible,
usually within seven calendar days of the date you request
review under *Step 3*.

### Step 4: FTP Committee

If the response of Facility Administration in *Step 3* does
not resolve your problem or dispute, you may request that the
problem or dispute be submitted to the *FTP Committee*. The
FTP Committee will be convened and administered by the
Human Resources Department, and usually is the final step in
the internal dispute resolution process that is utilized only
when the problem could not be resolved during Steps 1, 2 or 3.
When the matter is submitted to the FTP Committee, the FTP

3

Committee will meet as soon as possible, usually within 30 days of your request. The FTP Committee will promptly, objectively and confidentially decide the issue(s) presented to it for consideration. The FTP Committee is discussed in more detail in the "FTP Committee Process" section, below.

Once the problem or dispute has been submitted to the FTP Committee, the Committee will review the facts and make a decision based on the application of company policy and procedure, and may award back pay, where appropriate. The FTP Committee can 1) deny the remedy the employee has requested; 2) grant the remedy the employee has requested; 3) determine an alternative remedy or solution consistent with company policies and procedures; It also has the authority to decide whether or not a company policy or procedure has been followed. However, the FTP Committee does not have the authority to discipline employees, modify benefit plans, establish or change company policies or procedures, or award monetary (compensatory or punitive) damages, nor does the decision of the FTP Committee have the effect of setting precedent. The decision of the FTP Committee is subject to review by the Chief Executive Officer of the facility.

The grievances of facility management employees at the Department Head level or above and Corporate management employees are not subject to the FTP Committee process in Step 4. Those grievances are processed according to the steps set forth in the "Exclusions and Restrictions" section, below.

### Step 5: Final and Binding Arbitration

If you do not accept the decision reached in *Step 4*, then you have the right to submit the problem or dispute to final and binding arbitration. The arbitration process is limited to disputes, claims or controversies that a court of law would be authorized or have jurisdiction over to grant relief and that in any way arise out of, relate to or are associated with your employment with the company or the termination of your employment. In such cases, an impartial and independent arbitrator - chosen by agreement of both you and the company -- will be retained to make a final decision on your dispute or claim, based on application of company policies and procedures and applicable law. The arbitrator's decision is final and binding on you and the company. The arbitration process is discussed in more detail in the "Arbitration Process" section below.

### The FTP Committee Process

*Committee Composition:* The FTP Committee will consist of five facility employees, and will be chaired by a Human Resources Representative appointed by the Divisional Human Resources Department. The Chairperson will convene the FTP Committee meeting and will serve as the facilitator for the meeting. The Chairperson is not a voting member of the FTP Committee.

*Committee Selection:* Five facility employees will be randomly selected jointly by you and the facility representative, with the assistance of the Human Resources

4

Department, to serve on the FTP Committee. Three of the Committee members must be non-management employees, and two must be management employees. To ensure objectivity, the FTP Committee members should not be in the same department as the affected employee, should not be familiar with the dispute or have a close relationship with any of the parties or personnel involved in the dispute.

*Committee Proceedings:* The proceedings of the FTP Committee will be informal and conducted in accordance with the following guidelines:

a) The Chairperson will convene the meeting, introduce the parties, state the issues to be decided and present any pertinent information, including an explanation of the company policies and procedures involved, if necessary.

b) Each party will be permitted to present his or her case to the FTP Committee in accordance with such guidelines as to duration and manner of presentation as the Chairperson has established and communicated to the parties before the hearing.

c) Any party may present evidence in support of its position, including relevant documents and the testimony of witnesses; but a party may not present the testimony of more than three witnesses unless the Committee decides that there is good cause to allow additional witnesses. The Committee will determine what evidence it will consider and the weight such evidence will be given. The Committee may permit a party to submit a written statement at the FTP Committee meeting setting forth his or her position and the evidence supporting it.

d) At any time during the FTP Committee meeting, after the initial opening statement by both parties, the Committee members may ask questions or request information from the parties or from the witnesses.

e) Immediately following the FTP Committee meeting, the Committee members will convene in private to discuss the case and vote by secret ballot or by open vote on the issues presented. The Committee decision shall be determined by a majority vote (3 of 5). The Committee's responsibility shall be to carefully evaluate the facts presented and reach a decision based on those facts.

f) If the FTP Committee decides that it needs additional information during its deliberation in order to reach a decision, it may hear additional testimony and/or consider additional documents.

g) Once a decision has been reached by the FTP Committee, the FTP Committee meeting will be reconvened and, with the parties present, the Chairperson will announce the decision.

Alternatively, the decision of the Committee may be communicated to the affected employee by telephone or mail

5

without reconvening the Committee. The Human Resources Department will ensure that all actions required to implement the decision of FTP Committee are carried out promptly.

*Committee Members:* The FTP Committee process is an opportunity to participate in a process intended to ensure that employee issues are resolved in a prompt, fair and equitable manner. Employees who serve as FTP Committee members are required to accept the important responsibilities of Committee membership. The issues presented may have serious and long lasting consequences for all persons involved. All employees selected to serve on a FTP Committee must acknowledge their solemn responsibility to (1) render an objective and unbiased decision that is based only on the facts presented and the application of company policies and procedures, (2) maintain strict confidentiality and not disclose any of the information learned during the process, and (3) participate fully in the FTP Committee process.

The Arbitration Process

If you want to appeal the decision reached in Step 4 of the process, you must obtain and complete a "Request for Arbitration Form" from the Human Resources Department in order to initiate the arbitration process. That form also will serve to confirm your and the company's prior mutual agreement to submit the dispute to final and binding arbitration. The arbitration will be heard by an independent and impartial arbitrator chosen by you and the company. By deciding to arbitrate the dispute, you also agree that the remedy, if any, ordered by the arbitrator will be the only remedy as to all matters that are or could have been raised by you in the arbitration.

The arbitrator's responsibility is to determine whether company policies and procedures and applicable laws have been complied with in the matter submitted for arbitration. The arbitrator shall render a written decision on the matter within 30 days after the arbitration hearing is concluded and post-hearing briefs, if any, are submitted.

The arbitration will be administered by the American Arbitration Association ("AAA"). The company and you will share the cost of the AAA's filing fee and the arbitrator's fees and costs, but your share of such costs shall not exceed an amount equal to one day's pay (for exempt employees), or eight times your hourly rate (for non-exempt employees), or your local court civil filing fee, whichever is less. You and the company will be responsible for the fees and costs of your own respective legal counsel, if any, and any other expenses and costs, such as costs associated with witnesses or obtaining copies of hearing transcripts.

Exclusions and Restrictions

Certain issues may not be submitted for review (or exclusive review) under the FTP ("Excluded Issues"). Other issues may be subject to special restrictions ("Restricted Issues").

6

*Excluded Issues:* Workers' Compensation Claims, any claim involving the construction or application of a benefit plan covered by ERISA, and claims for unemployment benefits are excluded from the FTP. In addition, any non-waivable statutory claims, which may include wage claims within the jurisdiction of a local or state labor commissioner or administrative agency charges before the Equal Employment Opportunity Commission or similar local or state agencies, are not subject to exclusive review under the FTP. This means that you may file such non-waivable statutory claims with the appropriate agency that has jurisdiction over them if you wish, regardless of whether you decide to use the FTP to resolve them. However, if such an agency completes its processing of your action against the company, you must use the FTP if you wish to pursue your claim (although Steps 1 through 4 may be skipped). In addition, the FTP does not apply to employees covered by a collective bargaining agreement, unless otherwise agreed to by such employees.

*Restricted Issues:*

*Sexual Harassment Complaints:* Due to the sensitive nature of claims of sexual harassment, you are not required to use Step 1 of the FTP to raise sexual harassment claims if you do not wish to do so. Instead, you should follow the steps in the company's policy prohibiting sexual harassment. If you are not satisfied with the company's response to a claim for sexual harassment, then you must use the FTP to resolve the claim or dispute.

*Grievances of Management Employees:* Facility management employees at the Department Head level or above will use the following FTP steps to submit their grievances for review: *Step 1:* Immediate Supervisor; *Step 2:* Chief Executive Officer of the facility; *Step 3:* Regional Vice President; *Step 4:* Request for Arbitration. Facility Chief Executive Officers and management employees in the divisional or corporate offices will use the following FTP steps to submit their grievances for review unless the parties agree otherwise. *Step 1:* Immediate Supervisor; *Step 2:* The next level in the chain of command; *Step 3:* The next level in the chain of command; *Step 4:* Request for Arbitration.

Other Important Information

*Applicable Law and Procedural Rules:* The FTP shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. If for any reason the "FAA" is deemed inapplicable, the FTP will be governed by the applicable state arbitration statutes. The current Employment Dispute Resolution Rules of the AAA will govern the procedures to be used in such arbitrations, unless you and the company agree otherwise.

*Discovery and Amendment of Claims:* All discovery shall be conducted in accordance with the Employee Dispute Resolution Rules of the AAA. The arbitrator shall have the authority to order discovery sufficient to enable a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

7

*Limitations Periods:* Any request for arbitration under the FTP must be made within one year after the event giving rise to the dispute. If the claim was submitted to a federal, state or local agency, then a request for arbitration of that claim must be made within 90 days of the receipt of the agency's decision. However, if a longer limitations period is provided by a statute governing your claim, then your claim will be subject to the longer limitations period provided by the statute.

*Authority of Arbitrator:* The arbitrator has the authority to award any remedy that would have been available to you had you litigated the dispute in court under applicable law.

*Representation by Counsel:* During Steps 1 through 4 of the FTP, neither you nor the company may be represented by legal counsel, although both you and the company have the right to consult privately with your own counsel at any time at your own expense. Both you and the company may be represented by counsel at arbitration during Step 5 at each parties' own expense. Generally, the company will be represented by legal counsel at arbitration. The company will not provide legal advice to employees, but it strongly encourages employees to consult with independent legal counsel of their own choosing if they have any questions about whether they should be represented by legal counsel at arbitration or any other issue related to the arbitration.

*Confidentiality:* All statements and information made or revealed during the FTP are confidential, and neither you nor the company may reveal any such statements or information, except on a "need to know" basis or as permitted or required by law.

*At-Will Employment:* Nothing in the FTP shall be construed to create a contract of employment, express or implied, nor does the FTP in any way alter the at-will nature of the employment relationship between you and the company.

*Modifications to the FTP:* The company will not modify or change the agreement between you and the company to use final and binding arbitration to resolve employment-related disputes without notifying you and obtaining your consent to such changes. However, the company may change or modify the FTP procedures from time-to-time without advance notice and without the consent of employees. Additionally, the parties agree that the FTP procedures may be modified by the company as needed to comport with applicable state or federal law.

If you have any questions about the Fair Treatment Process, please contact your supervisor or the Human Resources Department.

# Exhibit B

RECEIVED

FEB 26 2010

AMERICAN ARBITRATION
RHODE ISLAND



American Arbitration Association
*Dispute Resolution Services Worldwide*

## CLASS ARBITRATION RULES

(ENTER THE NAME OF THE APPLICABLE RULES)
**Demand for Arbitration**

**MEDIATION:** *If you would like the AAA to contact the other parties and attempt to arrange mediation, please check this box* ☐
*There is no additional administrative fee for this service.*

| | | | | | | |
|---|---|---|---|---|---|---|
| Name of Respondent <br> Tenet Healthcare Corporation | | | Name of Representative (if known) | | AMERICAN ARBITRATION ASSOCIATION RECEIVED | |
| Address: <br> 1445 Ross Ave | | | Name of Firm (if applicable): | | MAR 0 4 REC'D | |
| | | | Representative's Address | | CCMC | |
| City <br> Dallas | State <br> TX | Zip Code <br> 75202 | City | State | Zip Code | |
| Phone No. <br> (469) 893-2000 | | Fax No. | Phone No. | | Fax No. | |
| Email Address: | | | Email Address: | | | |

The named claimant, a party to an arbitration agreement dated January 2007 _____, which provides for arbitration under the Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE
See attachment.

| | |
|---|---|
| Dollar Amount of Claim  $ | Other Relief Sought:  ☒ Attorneys Fees    ☒ Interest <br> ☒ Arbitration Costs  ☐ Punitive/ Exemplary  ☒ Other liquidated |

Amount Enclosed $ 384.00 _____    In accordance with Fee Schedule:  ☐Flexible Fee Schedule   ☒Standard Fee Schedule

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Familiar with wage and hour law, familiar with ERISA, familiar with RICO.

Hearing locale Philadelphia, Pennsylvania      (check one) ☒ Requested by Claimant   ☐ Locale provision included in the contract

| | |
|---|---|
| Estimated time needed for hearings overall: <br> _____ hours or __7.00__ days | Type of Business:  Claimant Employee _____ <br> Respondent Health Care Corporation _____ |

Is this a dispute between a business and a consumer?   ☐Yes  ☒No
Does this dispute arise out of an employment relationship?   ☒Yes  ☐No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☒Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one)  ☐ Atlanta, GA   ☐ Dallas, TX    ☒ East Providence, RI   ☐ Fresno, CA   ☐ International Centre, NY, with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| | | | | |
|---|---|---|---|---|
| Signature (may be signed by a representative)  Date: <br> _signature_  2·23·10 | Name of Representative <br> J. Nelson Thomas | | | |
| Name of Claimant <br> Francis Rooney, and others similarly situated | Name of Firm (if applicable) <br> Thomas & Solomon LLP | | | |
| Address (to be used in connection with this case): <br> c/o Thomas & Solomon LLP, 693 East Ave. | Representative's Address: <br> 693 East Ave. | | | |
| City <br> Rochester | State <br> NY | Zip Code <br> 14607 | City <br> Rochester | State <br> NY | Zip Code <br> 14607 |
| Phone No. <br> (585) 272-0540 | | Fax No. | Phone No. <br> (585) 272-0540 | | Fax No. <br> (585) 272-0574 |
| Email Address: | | | Email Address: <br> nthomas@theemploymentattorneys.com (see attached for additional). | | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.
Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879

Case 2:12-mc-00058-GP   Document 1   Filed 02/16/12   Page 26 of 39

## DEMAND FOR ARBITRATION

RECEIVED

FEB 2 6 2010

AMERICAN ARBITRATION
RHODE ISLAND

### I.  Parties

#### A. Claimant:

1. Name: Francis Rooney, and others similarly situated.

2. Address: c/o Thomas & Solomon LLP, 693 East Ave., Rochester, NY 14607.

3. Phone number: (585) 272-0540.

4. E-mail addresses:

- nthomas@theemploymentattorneys.com
- mlingle@theemploymentattorneys.com
- jcordello@theemploymentattorneys.com
- jcook@theemploymentattorneys.com.

AMERICAN ARBITRATION
ASSOCIATION
RECEIVED
MAR 0 4
CCMC

#### B. Respondents:

2. Names: Tenet Healthcare Corporation, Trevor Fetter, CEO of Tenet Healthcare Corporation, and Cathy Fraser, Senior Vice President of Human Resources of Tenet Healthcare Corporation.

3. Address: 1445 Ross Avenue, Dallas, TX, 75202.

4. Phone number: (469) 893-2000

5. The following are subsidiaries of Tenet Healthcare corporation: NME Psychiatric Hospitals, Inc., NME Psychiatric Properties, Inc., NME Rehabilitation Hospitals, Inc., NME Rehabilitation Properties, Inc., TenetCare, Inc., Tenet HealthSystem Holdings, Inc., Tenet HealthSystem Medical, Inc., Tenet HealthSystem Philadelphia, Inc., Tenet HealthSystem Hospitals, Inc., Tenet HealthSystem HealthCorp, OrNda Hospital Corporation, Tenet Hospitals, Inc., Tenet Alabama, Inc., Tenet California, Inc., Tenet Florida, Inc., Tenet Georgia, Inc., Tenet Louisiana, Inc., Tenet Massachusetts, Inc., Tenet Missouri, Inc., Tenet North Carolina, Inc., Tenet South Carolina, Inc., Tenet Tennessee, Inc., Tenet Texas, Inc., Tenet Healthcare Corporation 401K Retirement Savings Plan.

### I.  Nature of the Dispute

4. This dispute arises out of injuries suffered by the claimant, Francis Rooney, as well as all other employees similarly situated, caused by Respondents' violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., as well as the laws of the various states in which Tenet Healthcare does business.

5.      Tenet Healthcare operates hospitals and other health care facilities throughout the United States. In these locations, Tenet maintains a number of policies that deny employees their compensation at their statutorily required rate of pay for all hours worked:

    a.  Meal break deduction policy: Tenet maintains a policy to automatically deduct meal breaks from employees' time worked, even though Tenet knows that, due to hospital demands, employees rarely, if ever actually take a meal break. When employees have questioned their managers about the meal break deduction policy, Respondent's representatives have told employees that they were being fully paid for all their time, even though defendants knew compensable work time was being excluded from the employees' pay. These representations were part of a course of conduct to defraud employees out of their wages, and to prevent them from recovering their wages by misleading them into believing they had been fully paid as required by law. If employees' hours had been properly calculated, the time spent working during meal breaks often would included work that should have been calculated at applicable premium pay rates.

    b.  Unpaid Preliminary and Postliminary Work Policy: Respondents suffer or permit employees to perform work before and/or after the end of their scheduled shift, but fail to pay Plaintiffs and Class Members for all time spent performing such work as a result of defendants' policies, practices and/or time recording system. If Plaintiffs' and Class Members' hours had been properly calculated, the time spent, performing work before and/or after their shifts often would have included work that should have been calculated at applicable premium pay rates.

    c.  Unpaid Training Policy: Respondents suffered or permitted employees to attend compensable training programs, but fail to pay employees for all time spent attending such training sessions (the "Unpaid Training Policy"). If Plaintiffs' and Class Members hours had been properly calculated, the time spent attending training often would have included work that should have been calculated at applicable premium pay rates.

    d.  Overtime Calculation Policy: Tenet Healthcare also improperly calculates the overtime rate for employees. For example, defendants failed to include all remuneration such as bonuses and shift differentials in the calculation of Plaintiffs' and Class Members' regular rate of pay used to calculate their overtime rate.

6.      Through the paystubs and payroll information it provides to employees through the mail and otherwise, Tenet deliberately conceals from its employees that they do not receive compensation for all the work they performed and misleads them into believing they are paid properly. The payroll checks sent every pay period are false and deceptive because they mislead employees about the amount of wages to which they are entitled, as well as their status and rights under state and federal law.

7.    Respondents sponsor the Tenet Healthcare Corporation 401K Retirement Savings Plan (the Plan) for their employees. Employees participated in the Plan as plan participants and beneficiaries pursuant to 29 U.S.C. §1132(a)(1),(A)(3). Respondents have failed to keep accurate records of all time worked by employees. Tenet's records are therefore legally insufficient to determine employees' plan benefits.

## III. Amount in Controversy

8.    Claimant expects that his individual recovery will be less than $100,000.

## IV. Remedies Sought

9.    Plaintiffs and Class Members seek the following remedies:

(a)    An agreement that defendants will change their unlawful and deceptive policies.

(b)    An award of the value of Plaintiffs' and Class Members unpaid wages, including fringe benefits.

(c)    Statutory penalties and liquidated damages.

(d)    Treble damages.

(e)    An award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members rights.

(f)    An award of pre- and post-judgment interest.

(g)    Such other and further legal or equitable relief as the Arbitrator deems to be just and appropriate.

## V. Hearing Location

10.    Claimant requests a hearing in at the American Arbitration Association's Philadelphia Regional Office at 230 South Broad Street, 12th Floor, Philadelphia, Pennsylvania, 19102.

## EMPLOYEE ACKNOWLEDGMENT

I acknowledge that I have received a copy of the Tenet Healthcare Corporation Employee Handbook and Standards of Conduct and that I understand that they contain important information about the Company's general personnel policies and about my privileges and obligations as an employee. I further understand and acknowledge that I am governed by the contents of the Employee Handbook and Standards of Conduct (to the extent they are not inconsistent with any collective bargaining agreement that may otherwise govern my employment) and that I am expected to read, understand, familiarize myself with and comply with the policies contained in them.

I also understand that the Company may change, rescind or add to any of the policies, benefits or practices described in the Employee Handbook, except the employment-at-will policy and the Mutual Agreement to Arbitrate referred to below, in its sole and absolute discretion, with or without prior notice. I also understand that the Company will advise employees from time to time of material changes to the policies, benefits or practices described in the Employee Handbook.

Furthermore, I understand, acknowledge and agree that the Employee Handbook is not a contract of employment, that my employment with the Company is not for a specified term and that employment with the Company is at the mutual consent of the employee and the Company. Therefore, I hereby acknowledge that either I or the Company can terminate my employment relationship at will, with or without cause or notice, except to the extent that any applicable collective bargaining agreement provides otherwise.

In addition, I acknowledge that I have received a copy of the Tenet Fair Treatment Process brochure. Except to the extent that any applicable collective bargaining agreement provided otherwise, I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes except "Excluded Issues" that are related in any way to my employment or the termination of my employment with Tenet. I understand that final and binding arbitration will be the sole and exclusive remedy of any such claim or dispute against Tenet or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to use of arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of American Arbitration Association ("AAA").

I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration, and that the Company further agrees that if I submit a request for binding arbitration, my maximum out-of-pocket expenses for the arbitrator and the administrative cost of the AAA will be an amount equal to one day's pay (if I am an exempt employee) or eight times my hourly rate of pay (if I am a non-exempt employee), and that the Company will pay all of the remaining fees and administrative costs of the arbitrator and the AAA. I further acknowledge that this mutual agreement to arbitrate may not be modified or rescinded except in writing by both me and the Company.

| | |
|---|---|
| Employee Signature | Date |

Employee Name (please print)

**DETACH FOR HUMAN RESOURCES FILE**

1/07                1/07                                                      103

# Exhibit C

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of Arbitration Between

Re:  71-160-00255-10
     Francis Rooney, individually and on behalf of all
     others similarly situated
        v.
     Tenet Healthcare Corporation, Trevor Fetter, CEO
     of Tenet Healthcare Corporation, and Cathy Fraser,
     Senior Vice President of Human Resources of Tenet
     Healthcare Corporation
     – Dallas, Texas

## CLAUSE CONSTRUCTION AWARD

I, the undersigned Arbitrator, having been designated in accordance with the parties'
arbitration agreement, having been duly sworn, and having duly examined the proofs and allegations
of the parties, do hereby, AWARD as follows:

This Clause Construction Award is issued pursuant to Rule 3 of the American Arbitration
Association's Supplementary Rules for Class Arbitrations. Based upon my review of the arbitration
clause, the relevant law, the record, and the submissions of counsel, I conclude that the arbitration
clause in question does not permit the arbitration to proceed on behalf of a class.

### BACKGROUND

Claimant Francis Rooney commenced this arbitration against Respondents Tenet Healthcare
Corp., two of its officers, and twenty-four of its subsidiaries (collectively, "Respondent"). He
asserted claims individually and on behalf of a putative class of persons employed by hospitals

CLAUSE CONSTRUCTION AWARD – Page 1

within Tenant Healthcare Corp.'s system. Claimant, who works as a nurse in the emergency room at St. Christopher's Hospital for Children in Philadelphia, Pennsylvania, alleges that Respondent failed to pay him and other similarly situated employees all wages owed them due to their having worked "off-the-clock" as a result of Tenet's meal-break-deduction, unpaid-preliminary-and-postliminary work, unpaid-training, and overtime-calculation policies. He asserts claims under the Fair Labor Standards Act, 29 USC §§ 201-219, the Employee Retirement Income Security Act, 29 USC §§ 1001-1461, the Racketeer Influenced and Corrupt Organizations Act, 18 USC §§ 1961-1968, and "the laws of the various states in which Tenet Healthcare does business."

When he began working at St. Christopher's, Claimant signed an Employee Acknowledgment in which he acknowledged receipt of Respondents' Open Door Policy and Fair Treatment Process ("FTP") and voluntarily agreed to use that process for all disputes arising out of his employment, subject to certain exceptions that do not apply here, and to arbitrate any such claims or disputes. The FTP is a multi-step dispute-resolution program, which, assuming all of the steps are complied with, provides for an aggrieved party to arbitrate unresolved complaints. The FTP is bilateral; that is, both the employee and his or her employer must use it to resolve disputes. The FTP requires an employee to proceed through four separate dispute-resolution steps before proceeding to arbitration. The Steps allow for the resolution of employee disputes at the local level with the direct involvement of a claimant and his or her management team and, if unsuccessful, by an FTP committee comprised of the claimant's colleagues at the facility in question. During Steps 1 through 4, legal counsel may not participate in the actual FTP process. At Step 5 (arbitration), counsel are free to participate and the FTP encourages employees to seek counsel of their own in arbitration. Should a claimant proceed to arbitrate his or her dispute, the FTP caps the claimant's expenses. It further prohibits a party from unilaterally selecting an arbitrator and requires instead that the

CLAUSE CONSTRUCTION AWARD – Page 2

that the employee-claimant and the employer agree jointly to the arbitrator who will resolve the dispute.   The FTP expressly provides that is governed by the Federal Arbitration Act and the procedural rules of the American Arbitration Association.

After Claimant commenced the arbitration, the arbitration was stayed pursuant to the parties' agreement that Claimant would first comply with the FTP.   The stay was lifted when the parties advised the AAA and the Arbitrator that the FTP had been concluded.   Respondent then filed its Motion for Initial Arbitration Clause Construction Dismissing and/or Striking the Class and Collective Action Allegations from Claimant's Demand for Arbitration.   Claimant filed his Response to Respondents' Request to Preclude Class or Collective Claims, and Respondent in turn filed a Reply Memorandum in support of its motion.   Finally, Claimant filed a supplemental letter brief in further opposition to the motion.

### ISSUE PRESENTED

Whether the arbitration clause permits this arbitration to proceed on behalf of a class.

### FINDINGS AND CONCLUSIONS

In *Stolt-Nielsen S. A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010), the United States Supreme Court established the rule for deciding whether class arbitration is permitted under an arbitration agreement.   According to the Court, consent is at the heart of the rule, *id.* at 1773; that is, the question is whether "the parties *agreed to authorize* class arbitration," *id.* at 1776.   The Court grounded this rule in its jurisprudence interpreting the Federal Arbitration Act and provided guidance for applying the rule.   The Court concluded that "[a]n implicit agreement to authorize class-action arbitration . . . is not a term the arbitrator may infer solely from the fact of the parties'

CLAUSE CONSTRUCTION AWARD – Page 3

agreement to arbitrate." *Id.* at 1775. The Court also cautioned arbitrators from presuming that "the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id.* at 1775. Because the parties in *Stolt-Nielson* stipulated that there was "no agreement on the issue of class-action arbitration," the Court concluded that they could not be compelled to submit their dispute to class arbitration and did not decide "what contractual basis may support a finding that the parties agreed to class-action arbitration." *Id.* at 1776. Most recently, in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750 (2011), the Court explained its holding in *Stolt-Nielsen*: "We then held that the agreement at issue, which was silent on the question of class procedures, could not be interpreted to allow them because the 'changes brought about by the shift from bilateral arbitration to class-action arbitration' are 'fundamental.'"

Relying upon this holding, Respondent contends that the arbitration clause at issue – the FTP – is silent on a party's ability to pursue a class, collective, or group claim in arbitration. According to Respondent, the FTP does not expressly authorize class, collective, or group actions, and instead when read as a whole and in its entirety, actually evidences a contrary intent, permitting only the arbitration of individual claims. Respondent also urges that allowing class, collective, or group claims to be processed under the FTP would frustrate its express terms. Accordingly, Respondent contends that consistent with *Stolt-Nielsen*, Claimant may only pursue his claims in arbitration on an individual basis. Claimant disagrees and argues that the contract-interpretation question is instead answered by the parties' agreement to arbitrate "any and all claims and disputes." According to Claimant, this contract language requires that an arbitrator enforce the arbitration agreement to the full extent of its terms, including class or collective claims. The Arbitrator agrees with Respondent.

Claimant argues that the Arbitrator must construe the FTP against Respondents in the face

of ambiguity. Claimant presumes that Pennsylvania law applies, and given that presumption and the absence of a choice-of-law provision, Respondent cites to Pennsylvania contract law as the applicable state law. Because Pennsylvania applies the "plain-meaning approach" to contract interpretation, the starting point is the language of the contract itself. *See Steuart v. McChesney*. 498 Pa. 45, 444 A.2d 659, 661-63 (1982). "[W]here language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed . . . ." *Id.* at 661. "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 390 (1986). Claimant has not explained how the language of the parties' arbitration agreement is "reasonably susceptible of different constructions." After reviewing the language of the FTP, the Arbitrator concludes that the "terms are clear and unambiguous"; therefore, the intent of the parties is to be ascertained from the contract itself, rather from extrinsic evidence or through the use of rules of construction. *See id.*

The FTP is "silent on the question of class-action arbitration." *See Stolt-Nielson*, 130 S. Ct. at 1776; *AT&T Mobility*, 131 S. Ct. at 1750. Moreover, the language of the FTP cannot be read to expressly or implicitly permit class-arbitration. This is because the FTP instead expressly provides for bilateral arbitration. *See Stolt-Nielson*, 130 S. Ct. at 1776; *AT&T Mobility*, 131 S. Ct. at 1750.

Pursuant to the FTP, as a precondition to arbitration, a claimant-employee must comply with FTP Steps 1 through 4. All these Steps are written in the singular by using the words "you" and "your" to refer to an individual claimant. Steps 1 and 2 require that if an employee has a dispute with his or her employer, all claims must first be brought to the attention of "your supervisor," and if "you" are not satisfied with the supervisor's response, "you" may take the problem or dispute to "your Department Head." In turn, at Step 3, if the response from " your Department Head in *Step*

CLAUSE CONSTRUCTION AWARD – Page 5

2 does not resolve your problem or dispute," then "you" may submit the dispute to a Facility

Administrator. If the problem is not resolved by the Facility Administrator's Step 3 response, then

the employee may request in Step 4 that his or her problem or dispute be submitted to the FTP

Committee. The FTP Committee comprises a committee of five persons employed at the same

facility as the employee. Next, pursuant to the FTP, if "you" (the employee) do not accept the FTP

Committee's decision in Step 4, then "you have the right to submit the problem or dispute to final

and binding arbitration." Thus, as with the other FTP steps, Step 5's arbitration provision refers to

an individual arbitration claimant. Step 5 prescribes the scope of an arbitration as "limited to

disputes, claims or controversies that a court of law would be authorized or have jurisdiction over

to grant relief and that in any way arise out of, or relate to or are associated with your employment

with the company or the termination of your employment." If the matter proceeds to arbitration,

then the employee-claimant and the company-respondent jointly select an arbitrator to "make a final

decision on your dispute or claim." All this language expresses the parties' consent to bilateral

arbitration.

      The clear and unambiguous terms of the FTP evidence a dispute-resolution process designed

to address claims individually and not collectively. By agreeing to the FTP, Claimant agreed to

arbitrate any claims he may have against Respondent that are not resolved to his satisfaction through

the first 4 Steps of the FTP, and Respondent agreed to arbitrate only with employees, like Claimant,

who have completed Steps 1 through 4 of the FTP. Respondent has not agreed to arbitrate with each

and every employee that agreed to the FTP regardless of whether the employees have asserted a

claim under its provisions, followed its procedures, and decided to arbitrate pursuant to Step 5

because they are not satisfied with the results of their participation in Steps 1-4. As a result, the

FTP's arbitration clause can be interpreted to authorize arbitration on behalf of a class of employees

CLAUSE CONSTRUCTION AWARD – Page 6

who all signed the same agreement only by disregarding the FTP's express language or by countenancing a conflict with that language.

Contrary to Claimant's primary argument, the language in his Employee Acknowledgment obligating him to arbitrate "any and all claims and disputes . . . that are related in any way to my employment or the termination of my employment with Tenant" cannot supply the missing agreement to authorize class-arbitration. Language such as "any and all claims and disputes" refers to the breadth of an arbitration clause and is routinely interpreted to mean that any dispute arising out of the designated subject matter must be referred to arbitration. It says nothing about the procedural mechanism for resolving that claim or dispute. And in *Stolt-Nielsen*, the Supreme Court refused to construe an arbitration clause that required the parties to settle in arbitration "any dispute" arising out of the subject matter of the contract as authorizing class-action arbitration. *Id.* at 1765, 1775. Instead, the Supreme Court required more to support a conclusion that the parties "agreed to authorize" a class action. *Id.* at 1775. Justice Ginsburg, in her dissent, acknowledged that under the Court's ruling, "the breadth of the arbitration clause" is not a sufficient contractual basis for concluding that the parties agreed to authorize class arbitration. *Id.* at 1782. Thus, the FTP's broad arbitration provision does not manifest the parties' agreement to authorize class-arbitration.

Claimant's other arguments are similarly unpersuasive. Claimant turns *Stolt-Nielsen* on its head by arguing for the recognition of an agreement to arbitrate class and collective claims when the arbitration clause is at best silent on the issue of whether the parties agreed to class or collective arbitration, and when read as a whole and in its entirety, actually evidences a contrary intent.

First, the Arbitrator rejects Claimant's argument that because class and collective claims are statutorily authorized remedies available to him in court, the FTP effectively incorporates federal and state wage-and-hour law, and as a result, the parties have implicitly authorized class and

CLAUSE CONSTRUCTION AWARD – Page 7

collective arbitration. The mere inclusion of language providing for remedies available at law does not incorporate a procedural mechanism such as class or collective actions. A class or collective action is not a "remedy." Rule 23 is contained in the FEDERAL RULES OF CIVIL PROCEDURE, and neither Rule 23 nor Section 216(b) of the FLSA (the collective-action device) affords parties any substantive rights. *See Westerfield v. Washington Mut. Bank*, 2007 WL 2162989, *2 (E.D.N.Y. 2007). That such procedural rights are not "remedies" is further demonstrated by the Supreme Court's explanation in *Stolt-Nielsen* that class arbitration so drastically changes the nature and course of bilateral-arbitration proceedings that one cannot simply assume the parties agreed to such a procedural mechanism. *See* 130 S. Ct. at 1775-76. Similarly, the FTP's requirement that any claims be arbitrated pursuant to the FAA and the procedural rules of the American Arbitration Association do not manifest the parties' agreement to authorize class arbitration.

Finally, Claimant argues that the parties authorized class arbitration because "commonplace" class and collective wage claims are not included on the list of claims excepted from the FTP. At best, this is a further indication that the agreement is silent on the question of class arbitration, and silence is not enough under *Stolt-Nielson*. There can be no presumption of the parties' consent to class arbitration from that silence, and there can be no presumption of consent when making such a presumption would frustrate the express terms of the parties' agreement to bilateral arbitration.

## CONCLUSION

Nothing in the FTP evidences the parties' agreement, whether explicit or implicit, to authorize class or collective arbitration, and given the parties' express and unambiguous agreement to bilateral arbitration, no rules of construction can supply the missing consent. Moreover, construing the parties' arbitration agreement to authorize class arbitration would create a conflict

CLAUSE CONSTRUCTION AWARD – Page 8

with the express terms of the agreement.  The arbitration clause in question does not permit the arbitration to proceed on behalf of a class.

CLAUSE CONSTRUCTION AWARD

For the above state reasons, Respondent's Motion for Initial Arbitration Clause Construction Dismissing and/or Striking the Class and Collective Action Allegations from Claimant's Demand for Arbitration is GRANTED and Claimant's class and collective action allegations are DISMISSED.

Pursuant to the Supplementary Rules for Class Arbitration, the Arbitrator retains jurisdiction of this arbitration.  These proceedings shall be stayed for thirty days to permit any party the opportunity to move a court of competent jurisdiction to confirm or vacate this Clause Construction Award.  If all parties inform the Arbitrator in writing during the period of the stay that they do not intend to seek judicial review of this Clause Construction Award, or once the requisite time period expires without any party having informed the Arbitrator that it has sought judicial review, the AAA shall promptly arrange a case-management conference.

Dated this *17th* day of January, 2012.

Deborah G. Hankinson