IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TENET HEALTHSYSTEM PHILADELPHIA, INC., | : : : | CIVIL ACTION |
| Movant, | : : | |
| v. | : : | |
| FRANCIS ROONEY, | : : | NO. 12-mc-58 |
| Respondent. | : | |

**M E M O R A N D U M**

**GENE E.K. PRATTER, J.**                                                                 **AUGUST 14, 2012**

I.   INTRODUCTION

Tenet HealthSystem Philadelphia, Inc. ("Tenet") moves for an Order pursuant to Section 9 of the Federal Arbitration Act (the "FAA") confirming a Clause Construction Award issued by an arbitrator of the American Arbitration Association ("AAA") in connection with Respondent Francis Rooney's pending arbitration proceeding. Mr. Rooney cross-moves for an Order vacating the Arbitrator's April 12, 2012 order denying Mr. Rooney's motion to overturn the Clause Construction Award. For the reasons that follow, the Court grants Tenet's motion and denies Mr. Rooney's motion.

II.   BACKGROUND

Mr. Rooney works as a nurse at the Tenet-owned St. Christopher's Hospital for Children in Philadelphia, PA. As a condition of Mr. Rooney's employment, on two occasions he was

1

required to sign an employee acknowledgment form in which he agreed that any claims that may arise from his employment will be submitted to Tenet's "Open Door Policy and Fair Treatment Process" ("FTP"), a multi-step dispute resolution program that culminates in arbitration governed by the FAA and rules of the AAA.  See Pet. Mot. Exs. A-C.

In February 2010, Mr. Rooney commenced an arbitration proceeding before the AAA on his own behalf and on behalf of other Tenet employees alleging violations of the Fair Labor Standards Act ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), the Racketeer Influenced and Corrupt Organizations ("RICO") Act, and various state laws.

Tenet filed a motion requesting an interim award from the arbitrator ruling that the FTP did not permit Mr. Rooney's arbitration proceeding to continue unless on an individual basis.  In January 2012, the arbitrator granted Tenet's motion finding that "[t]he arbitration clause in question does not permit the arbitration to proceed on behalf of a class."  See Pet. Resp. Ex. C. Tenet then filed the instant motion under the FAA to confirm the arbitrator's Clause Construction Award.

In response to Tenet's Motion, Mr. Rooney filed a motion for a stay pending resolution by the arbitrator of his motion for reconsideration of her ruling that the collective action waiver in the FTP is enforceable (Doc. No. 2).  In his motion for a stay, Mr. Rooney argued that the Court should refrain from deciding Tenet's Motion to Confirm because he intended to file a motion asking the arbitrator to reconsider the award.  However, before the Court had the opportunity to rule on the motion to stay, counsel for Tenet informed the Court that on April 12, 2012, the arbitrator denied Mr. Rooney's motion to reconsider which formed the basis of his motion for a stay (Doc. No. 4).  The Court then mooted Mr. Rooney's motion for a stay and

ordered him to respond to Tenet's Motion to Confirm. In his response, Mr. Rooney cross-moved for an Order vacating the arbitrator's April 12, 2012 Order denying his motion to overturn the Award (Doc. No. 9).

**III.   DISCUSSION**

Section 9 of the Federal Arbitration Act provides that "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award." 9 U.S.C. § 9. "[M]indful of the strong federal policy in favor of commercial arbitration, [Courts must] begin with the presumption that the award is enforceable," and must confirm the award unless grounds exist for vacating the award pursuant to Section 10 of the FAA. Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219 (3d Cir. 2012).

Section 10 of the FAA sets forth only four narrow grounds for vacating an arbitration award, including:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Taken as a whole, "when parties agree to resolve their disputes before an

arbitrator without involving the courts, the courts will enforce the bargains implicit in such agreements by enforcing arbitration awards absent a reason to doubt the authority or integrity of the arbitral forum." Sutter, 675 F.3d at 219.  "When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).

Here, Mr. Rooney only raises Section 10(a)(4), that the arbitrator exceeded her powers, as grounds for vacatur of the Clause Construction Award.  An arbitrator subjects her award to judicial vacatur under Section 10(a)(4), "when [s]he decides an issue not submitted to h[er], grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." Sutter, 675 F.3d at 219 (citing Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account, 618 F.3d 277, 295-96 (3d Cir. 2010).  However, if an "arbitrator is [ ] arguably construing or applying the contract and acting within the scope of h[er] authority, the fact that a court is convinced he committed serious error does not suffice to overturn h[er] decision." Eastern Assoc. Coal Corp. v. Mine Workers, 531 U.S. 57, 62 (2000) (internal quotes omitted).

Mr. Rooney asserts only two arguments: (1) the arbitrator exhibited a manifest disregard of applicable law by failing to give controlling weight to the National Labor Relations Board ("NLRB") decision In re D.R. Horton, Inc., 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012), and (2) the arbitrator exceeded her authority by ignoring the express terms of the FTP.  The Court addresses each of these arguments in turn.

### A.     The D.R. Horton Case

Mr. Rooney first argues that the arbitrator exhibited a "manifest disregard of applicable law" by interpreting the FTP in a manner that violates the National Labor Relations Act ("NLRA").  See Resp. at 6 (citing Hurd v. Hodge, 334 U.S. 24, 34-35 (1948) (noting that if enforcing an agreement "would be violative of [federal statutes], it is the obligation of the courts to refrain from such exertions of judicial power")).

Mr. Rooney's argument is premised on D.R. Horton decision of the NLRB.  There, the NLRB held that requiring employees to sign a private arbitration agreement that prohibits collective actions under the FLSA as a condition of employment is an unfair labor practice in violation of Section 7 of the NLRA.[1]  D.R. Horton, 2012 WL 36274, at *5.  After noting that the right to collective action under the NLRA is a substantive right, the NLRB found that its determination did not present a conflict between the NLRA and the FAA policy favoring the enforcement of arbitration agreements because Congress did not intend for the FAA to disturb substantive rights.  Id. at *10-16.  It further found that even if a conflict did exist, its ruling was consistent with the policies of both statutes and the Supreme Court's FAA jurisprudence.  Id. at *16-17.  Thus, because the arbitrator interpreted the FTP as prohibiting class arbitration, Mr. Rooney argues that the arbitrator construed the arbitration clause in a manner that rests on "a manifest disregard of the applicable law" and it should be set aside.  See Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003) (noting that "[a] district court may . . . vacate an arbitrator's decision where the arbitrator's decision evidence[s] a manifest disregard for the law rather than an

---

[1] Section 7 of the NLRA provides, in relevant part, that employees have to right to "engage in . . . concerted activities for the purpose of . . . mutual aid or protection." 29 U.S.C. § 157.

erroneous interpretation of the law").

The Court is not persuaded by this argument. As an initial matter, without adopting a position on the continuing viability of the "manifest disregard" ground for vacatur, the Court notes that this ground for vacating an arbitrator's decision rests on, at best, shaky ground. In <u>Hall Street Assoc., L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 585 (2008), the Supreme Court suggested, without deciding, that the judicially created "manifest disregard of law" ground for vacatur may be properly considered only as a judicial gloss on the statutory grounds and that it is not an independent basis for vacatur. Since the <u>Hall Street</u> decision, the courts of appeals have disagreed about whether manifest disregard of the law remains a valid ground for vacatur. However, the Third Circuit Court of Appeals has not yet weighed in on the issue in any definitive fashion. <u>See</u> <u>Paul Green Sch. of Rock Music Franchising, LLC v. Smith</u>, 389 F. App'x 172, 176-77 (3d Cir. 2010); <u>compare</u> <u>Royal Bank America v. Kirkpatrick</u>, No. 11-1058, 2011 WL 4528349, at *4 (E.D. Pa. Sept. 30, 2011) (concluding that manifest disregard is not an independent basis for vacating an arbitration award) <u>with</u>, <u>Langlais v. PennMont Ben. Servs., Inc.</u>, No. 11-5275, 2012 WL 2849414, at *3 (E.D. Pa. July 11, 2012) (determining that manifest disregard remains a valid ground for vacating an arbitration decision).

Nevertheless, assuming its continued viability, "[t]o demonstrate a manifest disregard of the law, [Mr. Rooney] must show that the arbitrator knew of the relevant legal principle, appreciated its control of the outcome of the disputed issue but nonetheless 'willfully flouted the governing law by refusing to apply it.'" <u>Zammer v. Herman Miller, Inc.</u>, No. 10-922, 2011 WL 4948842, at *4 (E.D. Pa. Oct. 18, 2011) (quoting <u>Paul Green Sch.</u>, 389 F. App'x at 177). A manifest disregard for the law is different from a mere erroneous application of the law. "[T]here

must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, 918 F.2d 21, 24 (3d Cir. 1990).

Mr. Rooney fails to meet this high burden to demonstrate that the D.R. Horton case constitutes controlling law. Although the NLRB's construction of the NLRA is entitled to deference, the NLRB has no special competence or experience interpreting the FAA. Allegheny Ludlum Corp. v. N.L.R.B., 301 F.3d 167, at 174-75 (3d Cir. 2002); N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 529, n.9 (1984) ("While the Board's interpretation of the NLRA should be given some deference, the proposition that the Board's interpretation of statutes outside its expertise is likewise to be deferred to is novel."). Thus, the arbitrator and this Court are not obliged to give controlling weight to the NLRB's interpretations of the FAA or of recent Supreme Court decisions.

Additionally, since the D.R. Horton case was decided, district courts around the country have disagreed over its effect, and many have declined to adopt its rationale altogether in the face of conflicting Supreme Court precedent, statutory schemes, and questions over its precedential value. See, e.g., Delock v. Securitas Security Servs. USA, Inc., No. 11-520, 2012 WL 3150391, at *1-6 (E.D. Ark. Aug. 1, 2012) (observing the conflict between the rights guaranteed by the NLRA as discussed in D.R. Horton, and the strong federal policy favoring arbitration especially following the Supreme Court's decisions in Stolt- Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758 (2010),[2] AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011),[3] and CompuCredit

---

[2] In Stolt-Nielsen, the Supreme Court held that where an arbitration agreement is silent on the question of class procedures, the Court cannot interpret the agreement to allow class arbitrations because the "changes brought about by the shift from bilateral arbitration to

Corp. v. Greenwood, 132 S. Ct. 665 (2012),[4] but determining that "the NLRA bends to the FAA"); Morvant v. P.F. Chang's China Bistro, Inc., No. 11-5405, 2012 WL 1604851, at *8-12 (N.D. Cal. May 7, 2012) (holding that the reasoning of D.R. Horton "does not overcome the direct, controlling authority holding that arbitration agreements, including class action waivers contained therein, must be enforced according to their terms"); Jasso v. Money Mart Express, Inc., No. 11-5500, 2012 WL 1309171, at *8-10 (N.D. Cal. Apr. 13, 2012) (holding that, in light of CompuCredit, because "Congress did not expressly provide that it was overriding any provision in the FAA, the Court cannot read such a provision into the NLRA"); LaVoice v. UBS Financial Servs., Inc., No. 11-2308, 2012 WL 124590, at *6 (S.D.N.Y. Jan. 13, 2012) (declining to follow D.R. Horton, and interpreting Concepcion to stand for the proposition that an absolute right to collective action is inconsistent with the FAA's overarching purpose).

In light of the unsettled nature of the law and the posture of these motions – to confirm or to vacate the arbitrator's Clause Construction Award – the Court does not conclude that the arbitrator's decision to discount the D.R. Horton case renders her decision "a manifest disregard of the applicable law" that would justify this Court setting aside the Clause Construction Award.

---

class-action arbitration" are "fundamental." Stolt-Nielsen, 130 S. Ct. at 1776.

[3] In Concepcion, the Supreme Court considered whether a California rule rendering a class action waiver provision contained in individual cell phone customers' arbitration agreements unconscionable ran afoul of the FAA. 131 S. Ct. at 1746. In an opinion by Justice Scalia, the Court explained that a rule "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Id. at 1748.

[4] In CompuCredit, decided one week after D.R. Horton, the Supreme Court held that courts must enforce agreements to arbitrate according to their terms, "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been overridden by a contrary congressional command." CompuCredit, 132 S. Ct. at 669 (internal quotations omitted).

### B. Express Terms of FTP

Mr. Rooney next asserts that the arbitrator exceeded her powers by determining that the FTP does not authorize class arbitration. Mr. Rooney argues that because the FTP provides that "any and all claims and disputes except 'Excluded Issues'" shall be submitted to arbitration and "class or collective claims" were absent from the list of "Excluded Issues," the arbitrator exceeded her powers because her construction is contrary to the FTP's express terms.

However, in spite of Mr. Rooney's assertions, the FTP is silent as to whether class arbitration is permitted. "Silence regarding class arbitration generally indicates a prohibition against class arbitration, but the actual determination as to whether class action is prohibited is a question of interpretation and procedure for the arbitrator." Quilloin v. Tenet HealthSystem Philadelphia, Inc., 673 F.3d 221, 232 (3d Cir. 2012) (citing Stolt-Nielsen, 130 S. Ct. at 1775). Indeed, "[a]n arbitrator may exceed h[er] powers by ordering class arbitration without authorization." Sutter, 675 F.3d at 220. Here, the arbitrator reviewed the FTP and found it did not address the issue of class arbitration, let alone authorize it. The interpretation of whether the FTP authorized class arbitration was squarely within the arbitrator's purview, and she did not exceed her authority in determining that it did not.

## IV.     CONCLUSION

For the foregoing reasons, the Court grants Tenet's Motion to Confirm the Clause Construction Award and denies Mr. Rooney's Cross-Motion to Vacate.

An appropriate Order consistent with this ruling follows.


BY THE COURT:


 S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE